PEOPLE v SMITH

Docket No. 110110. Submitted December 13, 1989, at Detroit. Decided May 7, 1990. Leave to appeal applied for.

Rosie Smith was in the custody of the Department of Corrections at a half-way facility located in the City of Detroit when she failed to return to the facility when required on February 9, 1987. On February 20, 1987, the 36th District Court issued a warrant for Smith's arrest on a charge of prison escape. On April 18, 1987, Smith was arrested in Genesee County on an unrelated charge and was lodged in the Genesee County jail to await trial on that charge. On November 19, 1987, Smith was convicted of the unrelated charge and, on December 8, 1987, was sentenced to the Huron Valley Women's Facility. On December 29, 1987, Smith was arraigned on the February 20, 1987, prison escape warrant. On January 20, 1988, an information was filed against Smith in Detroit Recorder's Court. On February 12, 1988, defendant moved to quash the information and dismiss the case for failure to bring her to trial within 180 days of the issuance of the warrant and her incarceration on the unrelated charge. On March 7, 1988, the motion to quash and dismiss was denied, and Smith pled guilty to the prison escape charge. She was sentenced to six months to five years in prison to be served after completion of the sentence she was serving at the time of her escape, Robert L. Evans, J. She was given no credit for incarceration prior to the sentencing date. Smith appealed.

The Court of Appeals *held:*

1. For purposes of the 180-day rule, defendant was in the custody of the Department of Corrections from the time of her arrest on April 18, 1987, and, since the Department of Corrections was the complainant on the prison escape charge, the department knew or should have known that a warrant was outstanding against defendant from the date of its issuance on February 20, 1987, thus triggering the running of the 180-day period from the date of defendant's arrest, April 18, 1987.

REFERENCES
Am Jur 2d, Criminal Law §§ 854, 855, 857, 858, 863, 866.
Waiver or loss of accused's right to speedy trial. 57 ALR2d 302.

Defendant was not brought to trial within 180 days of her arrest, and the prosecution has not shown any just cause for the delay. Defendant is entitled to have her conviction reversed and vacated.

2. The issue of a violation of the 180-day rule is not waived by a guilty plea since the 180-day rule statute is jurisdictional and a guilty plea does not waive jurisdictional issues.

Defendant's conviction is reversed and vacated.

GRIFFIN, P.J., dissented. He would hold that a violation of the 180-day rule divests a court of personal jurisdiction over the defendant, not subject-matter jurisdiction over the matter, and that the defendant's unconditional plea of guilty relinquishes all personal jurisdiction defects which the defendant could claim, including the constitutional and statutory guarantees to a speedy trial. He would affirm defendant's conviction and sentence.

1. CRIMINAL LAW — SPEEDY TRIAL — INMATES — 180-DAY RULE.

An escaped prisoner who is being held in a county jail on an unrelated charge is considered to be within the custody of the Department of Corrections for purposes of the 180-day rule (MCL 780.131; MSA 28.969[1]).

2. CRIMINAL LAW — SPEEDY TRIAL — GUILTY PLEAS — 180-DAY RULE.

An unconditional guilty plea waives appellate review of a constitutional speedy trial claim but does not waive the issue of a violation of the 180-day rule since the 180-day rule involves the authority of the state to prosecute the defendant and a defendant's rights to challenge the authority of the state to prosecute him are never waived by a plea of guilty.

*Frank J. Kelley*, Attorney General, *John D. O'Hair*, Prosecuting Attorney, *Timothy A. Baughman*, Chief of Research, Training and Appeals, and *John P. Puleo*, Assistant Prosecuting Attorney, for the people.

*Wanda R. Cal*, for defendant on appeal.

Before: GRIFFIN, P.J., and GILLIS and SAWYER, JJ.

SAWYER, J. Defendant pled guilty to prison escape. MCL 750.193; MSA 28.390. She was sen-

tenced to serve a term of six months to five years in prison, to run consecutively to the sentence she was serving at the time of her escape. She now appeals and we reverse and vacate the conviction.

Defendant argues that the court lost jurisdiction over this matter because the prosecutor failed to exercise a good-faith effort to bring her to trial within 180 days after the issuance of the arrest warrant and her incarceration in the Genesee County jail on an unrelated charge, in violation of the so-called 180-day rule. MCL 780.131; MSA 28.969(1). We agree. Defendant was in the custody of the Department of Corrections at a half-way facility located in the City of Detroit when she "escaped" by failing to return to the facility when required on February 9, 1987. On February 20, 1987, the 36th District Court issued a warrant for defendant's arrest on the prison escape charge. On April 18, 1987, defendant was arrested in Genesee County on an unrelated charge and was lodged in the Genesee County jail to await trial on that charge.

This Court, in *People v England,* 177 Mich App 279, 284; 441 NW2d 95 (1989), held that an escaped prisoner who is being held in a county jail awaiting trial on an unrelated charge is considered to be within the custody of the Department of Corrections for purposes of the 180-day rule. Thus, defendant was in the Department of Corrections' custody from the time of her arrest.[1] Furthermore,

---

[1] The people also argue that, if we do accept defendant's incarceration in the Genesee County jail as being within the custody of the Department of Corrections, which we do, we should commence the running of the 180-day period only from the date on which the Department of Corrections placed a hold on defendant, which the people represent as being December 29, 1987. First, we are not convinced that the period for calculating the 180-day rule should only run from the date a hold was formally placed on defendant by the Department of Corrections. As the Court pointed out in *England, supra* at 284, the defendant "was an escaped prison inmate detained

inasmuch as the Department of Corrections was
the complainant on the prison escape charge, the
department knew or should have known that a
warrant was outstanding against defendant from
the date of its issuance on February 20, thus
triggering the running of the 180-day period from
the date of defendant's subsequent arrest.[2] Accord-

in jail awaiting certain return to prison." We conclude that defendant
was detained in the Genesee County jail awaiting an eventual return
to prison from the moment she was arrested and lodged in the
Genesee County jail by local officials and, thus, was in the depart-
ment's custody for purposes of the 180-day rule.

Furthermore, nothing in the record before us establishes that the
Department of Corrections did not place a hold on defendant until
December 29, 1987. The only "hold" reflected in the lower court
record on December 29, 1987, or any other date for that matter, was a
hold placed upon defendant in the instant action in the Recorder's
Court. Moreover, defendant was not even in Genesee County's custody
on December 29, 1987, inasmuch as that was the day she was
arraigned in 36th District Court on the instant offense. In fact,
defendant had been sentenced on the Genesee County matter on
December 8 and, although the record is not entirely clear, was at that
time either returned to the custody of the Department of Corrections
or to the custody of Wayne County.

Moreover, although the record does not reflect when a hold was
placed upon defendant while in Genesee County's custody, at the
hearing on the motion to quash a somewhat cryptic exchange be-
tween the trial court and defendant indicates that a hold was placed
upon defendant at some point during her incarceration in the Gene-
see County jail. Specifically, while discussing her custody in Genesee
County, the trial court inquired of defendant whether there was a
hold or lien from the Department of Corrections, to which the
defendant replied in the affirmative and indicated that "the Correc-
tions Department came and gave me 30 days loss of privilege for
escape." In any event, even if the "hold" date were relevant, there is
no reason to believe from the record that a hold was not placed on
defendant soon after her incarceration in Genesee County and, more
to the point, the people's representation that a hold was not placed on
defendant until December 29 is not supported by what few facts there
are in the record surrounding this issue.

[2] The people's argument that the prosecutor should not be charged
with knowledge of defendant's incarceration until December 29, 1987,
is both irrelevant and without merit. First, since the Department of
Corrections is charged with knowledge of the outstanding warrant,
that is sufficient to begin the running of the 180-day rule. *England,
supra* at 283. Furthermore, inasmuch as the escape warrant was
entered on the LEIN, the Genesee officials would have been aware as
soon as they arrested and identified defendant of the outstanding
escape warrant and we believe that it would be appropriate to charge

ingly, we conclude that the 180-day period under the statute began running upon defendant's arrest in Genesee County. Thus, defendant was not brought to trial within 180 days of that arrest. Furthermore, since the people have not shown any just cause for the delay, we conclude that the requirements of the statute were violated in this case and, therefore, defendant is entitled to have her conviction reversed and vacated.

Finally, we wish to briefly address the people's argument that defendant's guilty plea waived appellate review of this issue. The prosecutor is correct that an unconditional guilty plea waives appellate review of a constitutional speedy trial claim. *People v Rivera,* 164 Mich App 670; 417 NW2d 569 (1987). Thus, to the extent that defendant does also argue a violation of her constitutional right to speedy trial, appellate review of that argument has been waived by her unconditional guilty plea. However, defendant argued, and we decided, this matter on the basis of a violation of the 180-day rule statute and this statute is jurisdictional. Accordingly, the issue of a violation of the 180-day rule is not waived by a guilty plea since a guilty plea does not waive jurisdictional issues. *Rivera, supra.*

As for the view of the dissent that the issue of the violation of the 180-day rule is waived since it affects personal, rather than subject-matter, jurisdiction, we must disagree. Even assuming that our colleague in dissent is correct that this issue involves a question of personal jurisdiction, a conclusion upon which we offer no opinion, we do not believe it affects the analysis. The Supreme Court

that knowledge to the Wayne County prosecutor for purposes of the 180-day rule, thus satisfying the alternate requirement that the prosecutor knows or should have known of the defendant's incarceration. *Id.*

explained in *People v New,* 427 Mich 482, 495-496;
398 NW2d 358 (1986), what issues are waived by a
guilty plea:

> In summary, in addition to the *Reid* [*People v
> Reid,* 420 Mich 326; 362 NW2d 655 (1984)] condi-
> tional plea situation, a criminal defendant may
> appeal from an unconditional guilty plea or a plea
> of nolo contendere only where the claim on appeal
> implicates the very authority of the state to bring
> the defendant to trial, that is, where the right of
> the government to prosecute the defendant is chal-
> lenged. Such rights are never waived by a plea of
> guilty or nolo contendere. Where the claim sought
> to be appealed involves only the capacity of the
> state to prove defendant's factual guilt, it is
> waived by a plea of guilty or nolo contendere.

Thus, the question is not, as our dissenting col-
league would hold, whether defendant could waive
the issue. See *post,* pp 543–544, 548. Rather, the
question is whether the issue goes to the state's
authority to prosecute or to the state's ability to
prove guilt. The 180-day rule involves the former
issue, not the latter. Accordingly, it is not waived
by a guilty plea. Simply put, the issue is not
whether defendant *could* have waived the issue,
but whether she *did* waive it. In the case at bar,
defendant did not.

For the above reasons, we conclude that defen-
dant's conviction should be reversed, and since the
court lacks jurisdiction to try defendant, the deci-
sion is with prejudice to reinstating charges
against defendant and, thus, the conviction must
be vacated as well.

Defendant's conviction is reversed and vacated.

GILLIS, J., concurred.

GRIFFIN, P.J. *(dissenting).* At the present time,

there is a substantial split of authority within the Court of Appeals on the issue whether a defendant who enters an unconditional plea of guilty relinquishes his or her constitutional and statutory rights to a speedy trial. Panels of this Court in *People v Parshay,* 104 Mich App 411; 304 NW2d 593 (1981), lv den 411 Mich 1081 (1981), *People v Williams,* 145 Mich App 614, 617; 378 NW2d 769 (1985), and *People v Rivera,* 164 Mich App 670; 417 NW2d 569 (1987), have held that a guilty plea constitutes such a waiver of constitutional rights. Waiver of the statutory right to a speedy trial is less clear in these decisions.

Panels in *People v Davis,* 123 Mich App 553, 558-559; 332 NW2d 606 (1983), *People v Farmer,* 127 Mich App 472; 339 NW2d 218 (1983), *People v Wolak,* 153 Mich App 60; 395 NW2d 240 (1986), *People v Leroy,* 157 Mich App 334; 403 NW2d 555 (1987), and *People v Sickles,* 162 Mich App 344, 350-351; 412 NW2d 734 (1987), have concluded that constitutional or statutory speedy trial rights are not waived or relinquished by a guilty plea.

The panels of this Court which have held that the "180-day rule" is a viable defense despite an unconditional guilty plea base their decisions on "jurisdictional" grounds. They note that the statute, MCL 780.131; MSA 28.969(1), provides that a violation of the speedy trial rule divests the court of "jurisdiction" and untried warrants, indictments, and informations or complaints shall "be without any further force or effect." Although never specified, it is assumed that these panels construe the term "jurisdiction" to mean subject-matter jurisdiction rather than personal jurisdiction.

Jurisdiction involves the two different concepts of subject-matter jurisdiction and personal jurisdiction. Subject-matter jurisdiction encompasses those

matters upon which the court has power to act. Personal jurisdiction deals with the authority of the court to bind the parties to the action. Subject-matter jurisdiction is never waivable nor may it be stipulated to by the parties. Personal jurisdiction, however, is always waivable and defects may be corrected by stipulation.

The Supreme Court in *People v Phillips*, 383 Mich 464, 469-470; 175 NW2d 740 (1970), examined the distinction between subject-matter and personal jurisdiction and held that a criminal defendant may waive personal jurisdiction defenses:

> The jurisdiction of the court over the subject matter is not here questioned. We are concerned only with the validity of the procedure whereby that court sought to exercise its jurisdiction over the person of the accused.
>
> Jurisdiction over the subject matter, of course, could not be conferred by consent or waiver, but no reason appears why an accused could not subject himself to the court's personal jurisdiction. The procedural safeguards spelling out the method whereby a court obtains jurisdiction over the person of an accused are all designed for his protection. If he elects not to avail himself of the established procedural rights there appears to be none who should be heard to complain.

Later, in *People v New*, 427 Mich 482, 487-488; 398 NW2d 358 (1986), the Michigan Supreme Court looked to federal precedent to determine the scope of constitutional rights relinquished by a plea of guilty. After analyzing the guilty plea trilogy of *Brady v United States*, 397 US 742; 90 S Ct 1463; 25 L Ed 2d 747 (1970), *McMann v Richardson*, 397 US 759; 90 S Ct 1441; 25 L Ed 2d 763 (1970), and *Parker v North Carolina*, 397 US 790; 90 S Ct 1458; 25 L Ed 2d 785 (1970), and the later

cases of *Tollett v Henderson,* 411 US 258; 93 S Ct 1602; 36 L Ed 2d 235 (1973), and *Menna v New York,* 423 US 61; 96 S Ct 241; 46 L Ed 2d 195 (1975), the Michigan Supreme Court cited with approval the following passage from *Menna,* pp 62-63, n 2:

> Neither *Tollett v Henderson,* 411 US 258 (1973), nor our earlier cases on which it relied, e.g., *Brady v United States,* 397 US 742 (1970), and *McMann v Richardson,* 397 US 759 (1970), stand for the proposition that counseled guilty pleas inevitably "waive" all antecedent constitutional violations. If they did so hold, the New York Court of Appeals might be correct. However, in *Tollett* we emphasized that waiver was not the basic ingredient of this line of cases, 411 US 266. The point of these cases is that a *counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it quite validly removes the issue of factual guilt from the case.* In most cases, factual guilt is a sufficient basis for the State's imposition of punishment. *A guilty plea, therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction, if factual guilt is validly established.* Here, however, the claim is that the State may not convict petitioner no matter how validly his factual guilt is established. The guilty plea, therefore, does not bar the claim. [Emphasis added.]

The Federal Courts of Appeal have employed the *Menna* analysis to hold that speedy trial rights do not survive a guilty plea since the purpose of speedy trial rights is to guarantee that factual guilt is validly established. As the Seventh Circuit Court of Appeals stated in *United States v Gaertner,* 583 F2d 308, 311 (CA 7, 1978), cert den 440 US 918; 99 S Ct 1238; 59 L Ed 2d 469 (1979):

We believe Gaertner's speedy trial claim, whether based upon the Sixth Amendment or the Due Process Clause of the Fifth Amendment, is not open for our review after pleas of guilty. *The purpose of a prompt trial is to guarantee that the accused's right to a fair trial is not substantially prejudiced by pre-trial delay, or, put another way, to lend assurance that factual guilt is validly established.* Speedy trial violations preclude the establishment of guilt by trial, but a finding of guilt by a proper plea remains a viable option. Simply, the establishment of guilt is not logically inconsistent with speedy trial violations, and does not prevent the government from invoking the criminal process, so long as there is no trial. [Emphasis added.]

The Ninth Circuit Court of Appeals in *United States v O'Donnell,* 539 F2d 1233, 1236-1237 (CA 9, 1976), has also ruled in accord:

"A guilty plea, therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction, if factual guilt is validly established." [*Menna, supra.*]

The appellant in the instant case argues that the rights guaranteed by the Due Process Clause of the Fifth Amendment and by the right to a speedy trial of the Sixth Amendment are analogous to the rights protected by the Double Jeopardy Clause of the Fifth Amendment. He therefore contends that his guilty plea did not waive these violations. We disagree.

\* \* \*

*The protections afforded by the Fifth and Sixth Amendments are different. Their purpose is to insure that factual guilt is validly established.* That is, their purpose is to guarantee that the accused's right to a fair trial is not substantially prejudiced by either pro [sic]- or post-accusation

delays. The existence of such violations is consistent with guilt as a matter of fact. If guilt can be validly established such violations are not logically inconsistent therewith. While such violations preclude the establishment of guilt by trial, that is the extent of their reach. The establishment of guilt by a proper plea is not condemned by these protections. The Constitution protects the accused from conviction by trial but not a conviction by way of a plea of guilty. *Tollett* and the *Brady* trilogy control here. *Menna* is inapplicable. [Emphasis added.]

In *State v Anderson,* 417 NW2d 403 (SD, 1988), the South Dakota Supreme Court addressed the defendant's argument that his *statutory* right to a speedy trial was not relinquished by his plea of guilty. In rejecting the defendant's challenge, the South Dakota Supreme Court agreed with the weight of authority from other jurisdictions which holds that statutory rights to a speedy trial are waived or relinquished by a plea of guilty:

Anderson has asserted no violation of his constitutional rights to a speedy trial. He argues solely a technical noncompliance with the 180-day rule, a now codified speedy trial requirement created by Supreme Court rule. He claims no prejudice.

It is settled law that a voluntary and intelligent plea of guilty waives a defendant's right to appeal all nonjurisdictional defects in the prior proceedings. *State v Schulz,* 409 NW2d 655 (SD, 1987); *State v Cowley,* 408 NW2d 758 (SD, 1987); *State v Grosh,* 387 NW2d 503 (SD, 1986); *State v Janssen,* 371 NW2d 353 (SD, 1985).

We hold that noncompliance with the 180-day rule is a nonjurisdictional defect. We agree with the numerous jurisdictions holding that a defendant's plea of guilty waives his claimed statutory right to dismissal under the speedy trial rule. *German v State,* 492 So 2d 622 (Ala Crim App,

1985); *People v Ervin,* 125 AD2d 406; 509 NYS2d 124 (1986); *People v Kay,* 119 AD2d 834; 501 NYS2d 460 (1986); *People v Madsen,* 707 P2d 344 (Colo, 1985); *Gosnell v State,* 439 NE2d 1153 (Ind, 1982); *People v Iversen,* 82 AD2d 895; 440 NYS2d 286 (1981); *People v King,* 83 AD2d 674; 442 NYS2d 227 (1981); *People v Juhans,* 126 Misc 2d 868; 484 NYS2d 432 (1984); *People v C'Allah,* 100 AD2d 754; 474 NYS2d 305 (1984); *People v Harris,* 103 AD2d 891; 478 NYS2d 188 (1984); *Wright v State,* 496 NE2d 60 (Ind, 1986); *People v Hickman,* 129 AD2d 836; 513 NYS2d 849 (1987).

Therefore Anderson, by pleading guilty, waived any objection he might otherwise have claimed under the 180-day rule. [*Anderson,* p 405.]

Although the Michigan statute, unlike the South Dakota rule, refers to "jurisdiction," I believe that the "jurisdiction" to which the statute refers is *personal* jurisdiction, not subject-matter jurisdiction. The time limitations in the statute are analogous to the time limits for a civil summons and complaint. The untimely issuance or service of a civil complaint does not divest the court of subject-matter jurisdiction, but only of jurisdiction over the person. Such defects are waivable and do not divest the court of its authority to act. Cf. *People v Phillips, supra.* Also see *People v Johnson,* (opinion of BOYLE, J.) 427 Mich 98, 106-107; 398 NW2d 219 (1986).

The following language from the holding of *People v New, supra,* implies that speedy trial rights are relinquished by a plea of guilty:

On the other hand, where the defense or right asserted by defendant relates solely to the capacity of the state to prove defendant's factual guilt, it is subsumed by defendant's guilty plea. [*People v New, supra* at 491.]

As previously stated in *United States v Gaertner*

and *United States v O'Donnell,* the purpose of speedy trial rights (both constitutional and statutory) is to assure that factual guilt is validly established.

In my view, the policy considerations advanced by the Supreme Court in *People v New* are better served by holding that an unconditional plea of guilty relinquishes all personal jurisdiction defects including the constitutional and statutory guarantees to a speedy trial. In addition, the anomaly of relinquishment of constitutional but not statutory rights is avoided.

Accordingly, I respectfully dissent and would affirm.[1]

---

[1] In arguing that her conviction should be reversed, defendant relies upon *People v Hill,* 402 Mich 272; 262 NW2d 641 (1978), and *People v England,* 177 Mich App 279; 441 NW2d 95 (1989). The Supreme Court, however, has superseded these decisions by enacting MCR 6.004(D) (effective October 1, 1989). In view of my resolution of the preceding issue, I have chosen not to address the issue whether the policy of the newly enacted court rule should be retroactively applied.